PHILLIP A. TALBERT
United States Attorney
DAVID L. GAPPA
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:23-CR-00089 ADA-BAM |
| Plaintiff, | GOVERNMENT OPPOSITION TO MOTION FOR BAIL REVIEW |
| v. | DATE: June 21, 2023 |
| RODGER GITHENS, | TIME: 2:00 p.m. |
| Defendant. | COURT: Hon. Barbara A. McAuliffe |

## I.     INTRODUCTION

The defendant has filed a motion for bail review, and the court has scheduled a hearing for June 21, 2023. Githens should not be released from custody, because he has not rebutted the presumptions that he is a flight risk and danger to the community. And while Githens now points to equity in the residence that he owns, that property is subject to forfeiture, since it was used to facilitate commission of the offense charged in the indictment. Moreover, since his arrest Githens has taken steps to undermine confidence that he would abide by any conditions of release that the court might set. It would be extremely difficult for a Pretrial Services officer, even with assistance from a third-party custodian, to ensure the defendant's compliance with any conditions given his sophistication with technology and life-long and demonstrated sexual interest in children. Because Githens has not, and cannot, satisfy his very high burdens, he is a risk of flight and danger to the community and must remain detained.

## II. PROCEDURAL HISTORY

The government filed a criminal complaint against Githens on April 20, 2023, that alleges receipt and distribution of material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2); ECF No. 1. Githens made his initial court appearance on April 20, 2023, and Magistrate Judge Delaney ordered Githens detained as a risk of flight and a danger to the community. ECF Nos. 3 and 6. A grand jury returned a one-count indictment on May 4, 2023, charging Githens with the same offense alleged in the criminal complaint. ECF No. 11. The court arraigned Githens on the indictment on May 4, 2023, and a status conference is scheduled for July 12, 2023, with a Speedy Trial Act time exclusion through that date.

## III. LEGAL PRINCIPLES SUPPORTING GITHENS'S DETENTION

Under the Bail Reform Act of 1984, if a judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer *shall* order the detention of the person before trial." 18 U.S.C. § 3142(e) (emphasis added). The Ninth Circuit has held that detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk must be supported by a preponderance of the evidence only. *Motamedi*, 767 F.2d at 1406.

Under 18 U.S.C. § 3142(e)(3)(E) there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" when, as here, there is probable cause to believe that the defendant committed an offense involving a minor victim under 18 U.S.C. § 2252(a)(2). Notably, the presumption is not just that a defendant is a danger and a flight risk; rather, the presumption is that there is no combination of conditions that can be fashioned, even the most restrictive conditions, that will reasonably assure the safety of any person and the community as well as the defendant's presence at future court appearances. In *United States v. Hir,* 517 F.3d 1081 (9th Cir. 2008), Judge Reinhart confirmed that this presumption

OPPOSITION TO MOTION FOR BAIL REVIEW    2

shifts a burden of production to the defendant, but the government must prove by "clear and convincing" evidence that a defendant is a danger to any other person or the community, 18 U.S.C. § 3142(f)(2)(B). Alternatively, the government needs to prove that the defendant is a flight risk only by a preponderance of evidence.

In *Hir*, Judge Reinhart noted that if a defendant proffers evidence to rebut the presumption of dangerousness, a court must then consider four factors in determining whether release or detention is appropriate. These factors are: 1.) the nature and circumstances of the offense charged; 2.) the weight of the evidence against the person; 3.) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *United States v. Hir,* 517 F.3d 1081, 1086; 18 U.S.C. § 3142(g). As Judge Reinhart emphasized, the "presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 3142(g)." *Hir*, citing *United States v. Dominquez*, 783 F.2d 702, 707 (7th Cir. 1986).

A detention hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

**IV. THERE IS NO NEW EVIDENCE THAT COMPELS OR JUSTIFIES THE DEFENDANT'S RELEASE FROM CUSTODY.**

While 18 U.S.C. § 3142(f) permits the court to reopen a detention decision, the statute, on its face, does not apply here. The statute says that "the hearing may be reopened" when there is new information "not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f) (emphasis added).

Githens has not demonstrated that the equity in the property now being offered was not available to secure a bond when the court first considered the detention issue, so arguably it is not new information. And if anything, the property is less valuable today then when the court ordered Githens detained on April 20, 2023, since a *lis pendens* was filed against the property on May 26, 2023.  The government also filed on May 26, 2023, a bill of particulars that identifies the property as subject to forfeiture, since it was used to facilitate commission of the offense charged in the indictment.  ECF 11.  Although Githens has suggested that a third-party custodian could be ordered to monitor him, Githens has not identified a suitable third-party custodian.  Nor is it obvious that this person would not have been available at the time of the detention hearing on April 20, 2023.

V. **GITHENS REMAINS A FLIGHT RISK AND DANGER TO THE COMMUNITY**

Even if the court were to consider Githens's motion, the court should deny it.  Githens remains a risk of flight and danger to the community even considering his proposed conditions of release.  The criminal complaint affidavit provides extensive insight into the four factors relevant to determining whether release or detention is appropriate.  The nature and circumstances of the offense charged and the history and characteristics of Githens are on obvious display in comments he made as recently as late April and early May 2023 such as the following (Githens was using moniker wiy300):

| wiy300 | So you think about taboo every day too? |
|---|---|
| OCE-12020 | Yea. Watch it a lot and a little experience. Wbu |
| wiy300 | Me too |
| wiy300 | How young you into? |
| OCE-12020 | Young young. Wbu |
| wiy300 | Babies |
| wiy300 | ;) |

| wiy300 | I was sucking when I was 5 |
|---|---|
| wiy300 | Babysitter's husband |
| wiy300 | How young have you had? |
| OCE-12020 | 6 yo. Wbu |
| wiy300 | 5 |
| OCE-12020 | Nice. About the same |
| wiy300 | We made out, touched and he would jack me off |

ECF No. 1 at pages 3-4, para. 8.

Githens repeatedly told the undercover FBI agent that he (Githens) was not just into fantasy talk and was frustrated with those who were:

| | |
|---|---|
| **wiy300** | Honestly I love chatting but would love to have a dad or uncle invite me |
| **OCE-12020** | Yea that's hot. And you aren't about fantasy? |
| **wiy300** | No I'm not about fantasy. lol |
| **wiy300** | I'm experienced |
| **wiy300** | But need it again |
| **OCE-12020** | Ok cool |
| **OCE-12020** | What would u want to do. Let's say if I invited u |
| **wiy300** | I'm so tired of those types |
| **OCE-12020** | Assuming you aren't a flake hahah |
| **wiy300** | Yes |
| **OCE-12020** | I like to hear details. Gets me hard af |
| **wiy300** | Would love to make out with you both |
| **wiy300** | Touch you both |
| **wiy300** | Eat her pussy |

ECF No. 1 at page 5, para. 10.

And while Githens no doubt will argue now that he actually was just engaging in fantasy talk with the undercover agent, this is not credible. Nor is it helpful to Githens. Githens revealed several significant details about himself that were factually accurate. He told the undercover agent that he lived near Sacramento, California and that he was 45 years old. Githens also stated he was married to a 35-year-old Mexican man who was his Spanish tutor when they met. Githens described himself to the agent as a "very tall typical white guy. Shaved head professional type"  The agent confirmed that California DMV records showed that Githens listed himself as 6' 4" and his DMV photo showed him with a shaved or bald head. He also described his work as "consulting." Githens had been consulting for various institutions including universities. Once Githens felt sufficiently comfortable he shared a recent photo of himself. He also stated he was originally from the Midwest and had traveled to Mexico. Githens indeed grew up and attended schools in the Midwest, particularly Illiniois. Consistent with his statement to the undercover FBI agent, Githens also has traveled extensively to Mexico, where his husband was born. Thus, the overwhelming number of statements that Githens made to the undercover FBI agent were factually accurate.

Githens reiterated to the undercover FBI agent that he (Githens) was not just about chatting and fantasy. In Telegram communications he stated the following on March 26, 2023:

| wiy300 | I'm not messing with you |
|---|---|
| wiy300 | I'm real and don't want fantasy talk |
| wiy300 | I'm bored with that |
| OCE-12020 | Tell me how dirty you'd be and what you'd do |
| wiy300 | I want to stick my tongue deep in her pussy |
| wiy300 | Finger it |
| wiy300 | Eat her ass too |
| wiy300 | Make out with her |

Githens was crudely describing various things he wanted to do with a girl he was told was seven years old. The nature and circumstances of Githens's offense conduct are extremely serious, and his history and characteristics, as well as his character, confirm that he has a sexual interest in children. If Githens now suggests that he was "just" engaging in fantasy, even his fantasies confirm that he is a danger to the community. People fantasize about things and activities that interest them, and people who fantasize about raping children are dangerous. The danger that he presents to children is patent, since he has claimed to have attempted to meet a person in Hawaii who claimed he would permit Githens to engage in sexual activity with a one-year-old child. Githens also claimed he paid a person $400 to have sex with a minor in Mexico, but was the victim of a scam. When agents reviewed Githens's phone after it was seized with a search warrant, they saw that he had been engaging in recent chat communications with another adult male, believed to also be in Fresno, about arranging sex with minors in Mexico.

It is not clear that Githens's physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse weigh in his favor, but they certainly do not outweigh the factors that favor detention. Githens had been a professor as well as a consultant, but he was placed on leave from his teaching position. He should not be allowed to engage in consulting work in the community, and there would be no way for him to continue working from home – which is how he spent, by his estimate, 70% of his work time – without access to technology that he has used to sexually exploit minors. Githens has been married for many years, but he also told the undercover agent that his husband had also engaged in sexual activities with minors. As noted in paragraph 12 of the complaint affidavit, on March 26, 2023, Githens stated that his

husband was into "young" (as young as 8 years-old) as well and had been with a child as young as 13 years of age.  If Githens denies this now and suggests again this was just "fantasy" talk, it means he was lying to the agent.  He wanted the agent to believe that his husband shared their deviant sexual interests.  If he claims now that was just fantasy, he's asking the court to place its confidence someone who is an admitted liar who enjoys talking with people about raping children.

Githens has a very advanced facility with technology, so there are no conditions that could adequately mitigate the risks to the community that he would present by being out of custody.  This is true even if Githens were on the most restrictive form of home incarceration with electronic monitoring.  Notably, investigators found what is believed to be a private internet protocol address on the defendant's iPhone, and this allows someone to use a home internet router but not have any illicit activity traced to their residential internet account.  He was also heard on a jail call telling his husband that he needed to change the internet service to their residence.  Githens also used the TOR (The Onion Router) browser to access sites on the dark web as well as sophisticated encryption techniques.  For instance, he initiated contact with the undercover FBI agent on Grindr but quickly moved their communications to Telegram, an application that uses end-to-end encryption.  And within the Telegram application, Githens preferred to communicate with the "secret" chat function which enables a user to delete all chat content by simply closing out the chat.  Timers can also be set to destroy chat content and/or images that are sent after specific times.  Moreover, even though agents were able to access some content on the defendant's phone by applying biometrics, at least one other container remains fully encrypted and not accessible.  ECF No. 1 at 24, para. 42.   And Githens has discussed, in calls from the Fresno County Jail, with his sister changing passwords for his 1Password account.  This online account controls passwords to other online accounts and applications believed to have been used to distribute child sexual abuse material.

Compounding this risk is that this district does not use real-time location tracking for defendants on pretrial release.  So there is no reliable method of knowing where someone is or what they are doing when they are not within the range of a radio frequency monitor and transmitter at their home.  No doubt the defendant would, at times, request permission to leave his residence for attorney, medical, mental health, or other appointments, and this would let him be at large in the community without any

OPPOSITION TO MOTION FOR BAIL REVIEW       7

supervision. Judge Reinhart noted this problem in *Hir* when he echoed concerns by the First Circuit in how ineffective electronic monitoring can be. It "does not prevent a defendant from committing crimes within the monitoring radius, [and] there is no reasonable way to assure that a defendant would not make impermissible stops or detours on his way to places permitted under the restrictions, and . . . phone monitoring could be evaded by use of cellular and pay phones." *Hir* at 1092, citing *United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990).

Although the Ninth Circuit has suggested that the amount or weight of evidence against a defendant should be given the least consideration of factors relevant to the detention decision, the evidence against Githens is very strong. Githens was sharing images of infants being raped. The complaint affidavit states that Githens, sent a video that depicts a young child, possibly under the age of eight years old being raped by an adult male. Githens messaged "Hope it won't freak you out", and "I get it completely it's pretty extreme." Githens next shared a video depicting a young male child, who appeared to be under the age of 12 performing oral sex on an adult male. Githens wrote under the video, "This cutie likes it". ECF No. 1, at 24, para. 41. The defendant has suggested that the search warrant affidavit left off a material fact, because it failed to include a statement that the defendant cancelled the meeting in Fresno with the undercover FBI agent. There was no material omission in the affidavit, however, because it had been submitted to the reviewing magistrate prior to the time that Githens stated that he did not intend to drive to Fresno. And the complaint affidavit references that Githens had called off several planned meetings in Fresno. But none of that negates all of the statements that Githens made which have demonstrated his sexual interest in children or the corroborating material recovered from his phone.

If released, asking a Pretrial Services Officer in the current environment to monitor the defendant's deviant sexual interests and technical sophistication would amount to a nearly impossible task. For example, even if round-the-clock location monitoring were ordered, it would provide little protection for the community. Judge Paul Grimm aptly described why this is the case in *United States v. Adam Martin*. 447 F.Supp.3d 399 (D. Md. March 17, 2020):

> While the location monitoring that he proposes may offer useful information about where he is, it provides little useful information about what he is doing, and the ready accessibility of smart

phones and digital communication devices would make it all too easy for him to resume his involvement (directly or through confederates) in the distribution of controlled substances without detection. Moreover, location monitoring is not a limitless resource, nor is its installation and monitoring by United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given the current recommendations regarding implementation of social distancing.

*Id.* at 403.

Even confining Githens to his home would subject the community to substantial risks, as he has talked about being sexually stimulated every time he sees or hears children outside a residential window.

| wiy300 | We used to have a school around the corner and I'd jo from the sounds of kids playing |
| OCE-12020 | Ughh that's hot afff man |
| OCE-12020 | From your home or car?? |
| wiy300 | At home I could hear them |
| OCE-12020 | So hot |
| wiy300 | Last year i was out of town for work staying in an airbnb across from an elementary school playground. I edged watching and listening from inside the apartment |
| OCE-12020 | So dirty. I fucking love it |
| wiy300 | I like thinking about how many other guys like us do that too |
| OCE-12020 | Same man. I love thinking about it |
| wiy300 | I always think sexual thoughts when I see a little kid |

Moreover, nothing since the court entered its detention order has changed the defendant's incentives to flee. He will be subject to significant penalties upon conviction. Notably his U.S. Sentencing Guidelines range likely exceeds the statutory maximum 240-month term of imprisonment. The defendant is fluent in Spanish and is married to someone from Mexico who still has family ties there. The defendant has traveled regularly to Mexico and discussed having been scammed out of $400 as the only reason he didn't engage in sexual activities with a minor in Mexico. He did claim to have sexually touched one of his husband's young relatives when chatting with the undercover FBI agent. And flight risk is not limited to a defendant leaving the country. This district's Pretrial Services officers must carefully weigh which defendants can be closely supervised, and in-person visits are necessarily limited in number and time. This means that supervision of Githens would likely be less intensive, if he were to flee, and law enforcement would have reduced capacity to track him and return him to custody.

Nor has the defendant taken any steps to mitigate the danger that he poses to others. Danger to the community is not limited to physical violence. It can take different forms. *See, e.g.*, *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) ("[D]anger may, at least in some cases, encompass pecuniary or economic harm."); *United States v. Harris*, 2018 WL 3239624, at *3 (E.D. Mich. July 3, 2018) ("Defendant also allegedly has obstructed justice by attempting to destroy evidence while in jail, which suggests that she would take other illegal actions if released."); S. Rep. No. 98-225 at 12-13 (Senate Judiciary Committee report on Bail Reform Act, stating, among other things, that the Committee "intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence."). The defendant presents the same danger to the community that he did at the time of the court's prior ruling that he remain detained, and there is no indication that he has engaged in any type of counseling or therapy since then (nor is it clear that therapy or counseling can change the defendant's sexual attraction to children, especially if it has only taken place for a short time). Nor should the community bear the risks of another offense if the defendant were permitted to attend counseling as a condition of pretrial release.

## VI. CONCLUSION

There is no new evidence or information that justifies revisiting the defendant's custody status. Because Githens remains a danger to the community and an unacceptable risk of nonappearance at future court appearances, he should remain detained.

Dated: June 12, 2023

PHILLIP A. TALBERT
United States Attorney

By: /s/ DAVID L. GAPPA
DAVID L. GAPPA
Assistant United States Attorney