IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>RODGER GITHENS,<br><br>                    Defendant. | CR. NO. 23-00089 JAO-BAM-1<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ON THE GROUNDS THE WARRANT LACKED PARTICULARITY AND WAS OVERBROAD (ECF NO. 65) |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ON THE GROUNDS THE WARRANT LACKED PARTICULARITY AND WAS OVERBROAD (ECF NO. 65)**

Defendant Rodger Githens is charged by Superseding Indictment with two counts:  Attempted Coercion and Enticement (a violation of 18 U.S.C. § 2422(b)), and Receipt or Distribution of a Visual Depiction of a Minor Engaged in Sexually Explicit Conduct (a violation of 18 U.S.C. § 2252(a)(2)).  ECF No. 78.  Before the Court is his Motion to Suppress on the Grounds the Warrant Lacked Particularity and Was Overbroad ("Motion").  ECF No. 65.  In it, he contends that a warrant served on his property and, in particular, his computer devices, was an unconstitutional general warrant.  For the reasons outlined below, the Court DENIES the Motion.

# I.    BACKGROUND

## A.    The Search Warrant and Supporting Affidavit

On April 5, 2023, Federal Bureau of Investigation Special Agent Adam Bruflat submitted an affidavit ("Affidavit") in support of a search warrant application, seeking to search Githens' home, vehicle, and person for evidence of 18 U.S.C. § 2422—Coercion and Enticement of a Minor ("enticement"), and Attempt.  ECF Nos. 41-1 at 4–7; 41-2.  Chief Magistrate Judge Kendall J. Newman approved the application and signed a search warrant ("Search Warrant"), permitting the search for items listed in Attachment B to the Search Warrant.  ECF No. 41-1.  Most relevant to the Court's analysis are the Affidavit and Attachment B.

### 1.    The Affidavit[1]

#### a.    The Investigation

The nearly 30-page Affidavit describes an investigation that began on March 25, 2023 with an Online Undercover Employee ("OCE") creating an undercover account on Grindr.  ECF No. 41-2 ¶ 7.  The OCE claimed to be a "'taboo-friendly' uncle" and had tagged his undercover account as "'dirty, discreet, curious, and parent.'"  *Id*.  According to the Affidavit, "taboo" means "sexual activity that is

---

[1]  The contents of this section are based on select relevant portions of the Affidavit.

forbidden or not talked about publicly, such as incest, rape or sex with a minor."

*Id*. at ¶ 7 n.2.  Within an hour of the posting, Githens, utilizing the username

"wiy300," [2]  reached out to the OCE, having found the OCE's post by searching for

the "parent" tag.  *See id*. ¶¶ 8–9.  Githens invited the OCE to utilize a couple of

different messaging platforms, including Telegram, for security reasons.  *See id*.

¶ 8.  The OCE downloaded Telegram, and the two continued to message.  *Id*. ¶ 9.

The OCE represented that he had a seven-year-old niece with whom he was

having sexual relations.  *Id*.  The two then chatted about their pedophilic desires:

> [Githens]:    So you think about taboo every day too?
>
> [OCE]:        Yea. *Watch it a lot and a little experience.  Wbu*[3]
>
> [Githens]:    *Me too*
>
> [Githens]:    How young you into?
>
> [OCE]:        Young young.  Wbu
>
> [Githens]:    Babies.

*Id*. (emphasis added).

Their exchanges continued into explicit detail about their proclivities and

experiences, during which the OCE referenced his niece and Githens said he

---

[2]  For purposes of the Motion, Githens doesn't deny that he was the one communicating with the OCE using the wiy300 screenname.

[3]  Although no one explains what "wbu" means, the Court assumes from context that it stands for "What 'bout you?".

"loved 'little puffy pussy lips'" and suggested, "[w]e could video chat sometime to get comfortable[.]" *Id.* ¶ 11–12.

Later in that same conversation, the two discussed Githens' lack of sexual experiences with girls, and how he had only seen their genitalia in videos:

| | |
|---|---|
| [Githens]: | Would love to make out with you both |
| [Githens]: | Touch you both |
| [Githens]: | Want to know the truth? |
| [OCE]: | Yea |
| [Githens]: | She'd be the first girl I've ever been with |
| [Githens]: | Of any age |
| [OCE]: | Really? |
| [Githens]: | Yeah lol |
| [Githens]: | Never made out with one |
| [Githens]: | I'm very masculine but was never with women |
| [OCE]: | I thought you said you liked puffy pussy lips haha |
| [Githens]: | I do |
| [Githens]: | *I've only seen then* [sic] |
| [OCE]: | Oh ok.  Gotcha |
| [Githens]: | *In vids* |
| [Githens]: | Turn off I guess lol |

*Id.* (emphases added).

After that initial conversation, the two communicated again three days later, during which Githens admitted to having some sexual contact with his husband's

eleven-year-old nephew in Mexico. *Id*. ¶ 17. The two also discussed meeting in person and Githens said that he wanted to perform oral sex on the OCE's seven-year-old niece, remarking, "I am so turned on by smooth puffy lips[.]" *Id*.

On March 28, 2023, Githens asked the OCE to send him a photo of the OCE's niece watching TV. *Id*. ¶ 21. The following day, the OCE sent an image of an approximately eight-year-old girl whose abdomen and white underwear were exposed from under a bed sheet, to which Githens responded, "[i]t's very nice[.]" *Id*. ¶ 22. He also later mentioned how he would bring the niece's favorite candy and a Disney doll to their meeting—which was later scheduled for April 7, 2023, *Id*. ¶ 23–24, and subsequently cancelled.

### b.    Additional Relevant Language

Additional passages of the Affidavit are relevant to the Court's analysis here. Special Agent Bruflat stated that he had been an FBI Special Agent since 2021, and handled "a myriad of cases involving child exploitation, child pornography, and online enticement." ECF No. 41-2 ¶ 2. He reported experience "in the investigation of several cases involving the attempts by offenders to have sexual activity with minors, and the attempts have included contact with law enforcement investigators purporting to be the parent or caretaker of a minor who is being made available for sexual activity." *Id*. ¶ 3. He also said that he had "gained expertise" in child exploitation investigations through training and on-the-job work. *Id*. ¶ 4.

Special Agent Bruflat further surmised, "[b]ased on [his] training, experience, and conversations with other experienced child exploitation investigators," and on the chats between himself and Githens, that Githens had "conducted these online chats via a mobile device at his home residence and at his workplace" and that "Githens will have one or more electronic devices on him, which is common for child sexual predators." *Id*. ¶ 31. He also stated, "I believe sexual predators maintain several different electronic devices and online personas to obscure their true identity. I believe GITHENS's electronic devices on his person, in his vehicle and/or residence will possess evidence of the actual or attempted Online Enticement of a minor in violation of 18 U.S.C. § 2422." *Id*. Significantly here, the Affidavit did not explicitly indicate that Special Agent Bruflat expected that Githens would have child pornography on his devices; however, it did state that he believed, "based on [his] training and experience, and the training and experience of other law enforcement investigators with whom I have spoken, that the items listed in Attachment B, which is incorporated into this Affidavit by reference, are items most often associated with the online enticement of children." *Id*. ¶ 1. And, as described below, child pornography was listed in Attachment B. *See* ECF No. 41-1.

2.    **Attachment B**

Attachment B to the Affidavit and Search Warrant listed the items that were to be seized. *Id*. at ¶ 43; ECF No. 41-1. Significant here, Attachment B reads:

> The items, information and data to be seized . . . are fruits, evidence, information relating to, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 18 U.S.C. § 2422, Coercion and Enticement and Attempt, as described in the search warrant affidavit, including:
>
> 1. Visual depictions in any format or medium including still images, videos, films, or other recordings, of child exploitation, including child erotica;
>
> 2. Any software, hardware, mechanisms, or data used for or capable of being used for the possession, accessing, viewing, receipt, distribution, advertising, or production of images of child exploitation or child erotica;
>
> \* \* \*
>
> 4. All documents; records; communications; correspondence; electronic files; diaries; envelopes; labels; notes; e-mails; address, contact, or mailing lists; text messages; instant messages; chats . . . visual depictions; audio recordings or files; and other data or metadata, whether digital, electronic, documentary, or other form, relating to the following:
>
> a. The possession, accessing, viewing, receipt, distribution, advertising, or production of child sexual exploitation, or the attempt to commit these offenses, including data relevant to any person's knowledge or lack of knowledge of these activities and data related to visual depictions described in paragraph one (1) above;
>
> \* \* \*

        d.    The    identification    or investigation of persons, groups, or online services involved in the sexual exploitation of any minor;

           * * *

        f.    An interest in child pornography or child erotica, a sexual interest in children under 18, or personal contact and other activities with children[.]

           * * *

        6.    Any records relating to GITHENS's purchase of gifts for the minor child; i.e.- purchase of dolls/candy.

ECF No. 41-1.

### 3.    The Search

The FBI served the search warrant on April 19, 2023.  ECF No. 73 at 6.  The Government posits that, "[w]hile investigators reviewed Githens' phone, they saw that Githens had exchanged numerous images and videos of children being sexually abused with numerous other Telegram users."  *Id*.  The phone also revealed "numerous [Telegram] chats . . . several of which included comments from Githens, using screen name wiy300, demonstrating his sexual interest in children."  *Id*.

### B.    Procedural History

The Grand Jury returned an Indictment against Githens on May 4, 2023, charging him with one count of Receipt or Distribution of a Visual Depiction of a

Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C.

§ 2252(a)(2).  ECF No. 11.  He has been detained pending trial.  ECF No. 31.

Githens then filed a motion to suppress, challenging the same search warrant that is at issue here, and arguing that: (1) a *Franks* hearing was necessary and (2) his chats with the OCE were protected by the First Amendment.  ECF Nos. 40, 41. After full briefing and a hearing, ECF Nos. 48, 51, 52, District Judge Jennifer L. Thurston denied that motion, concluding that the information Githens alleged was excluded from the Affidavit was either included in it or didn't impact the probable cause determination, and that the First Amendment does not protect the communications here.  ECF No. 54.

On August 7, 2025, Githens filed the instant Motion.  ECF Nos. 65, 66. Twenty days later, this case was reassigned to the undersigned.  ECF No. 69.  The Government filed its opposition to the Motion on September 19, 2025, arguing that the search warrant was not overbroad and that, alternatively, the evidence recovered was in plain view and/or would have been inevitably discovered, and that the good faith exception applied in any event.  ECF No. 73.  Appended to the Motion was an affidavit from Allison Boos, a certified Digital Evidence Extraction Technician, who asserted that, in reviewing Githens' iPhone pursuant to the search warrant, she saw the Telegram application, and that, when she opened the first Telegram chat, she discovered child pornography.  ECF No. 73-1.

The Court then held a status conference on September 22, 2025, ECF No. 74, during which it directed defense counsel to file a position statement regarding whether Githens sought an evidentiary hearing on the Motion. ECF No. 74. He did so, stating that Githens "does not believe an evidentiary hearing is necessary to determine whether the warrant lacked particularity and was overbroad." ECF No. 75 at 2. He essentially contended that the Government should have limited its search only to the communications with the OCE's screenname ("mikeyp559x") and that, "should the Court determine that the first Telegram chat message agents opened from a Telegram user is material to determine whether the exclusionary rule applies ***and*** the factual matter of which Telegram chat was opened first is disputed by the defense, the defense would request an evidentiary hearing." ECF No. 75 (emphasis in original). The Court then set a motion hearing, indicating that it would hold a subsequent evidentiary hearing "if it becomes necessary." ECF No. 77.

On October 16, 2025, the Grand Jury returned a Superseding Indictment, that added as Count One – Attempted Coercion and Enticement in violation of 18 U.S.C. § 2244(b), and listed as Count Two the prior charge of Receipt or distribution of a Visual Depiction of a Minor Engaged in Sexually Explicit Conduct. ECF No. 78.

Githens filed his Reply to the Government's opposition to the Motion on November 10, 2025, ECF No. 83, and the Court held argument on November 17, 2025, ECF No. 85.

## II.    DISCUSSION

Githens attacks the search warrant on two primary grounds: (1) that the warrant was an overbroad general warrant that lacked particularity; and (2) the good faith exception does not apply here. *See generally* ECF No. 66. The Government responds that: (1) the search warrant wasn't overbroad; (2) in any event, the agents would have discovered contraband in plain view and would have inevitably discovered the additional child pornography images by seeking another search warrant; and (3) the good faith exception applied. *See generally* ECF No. 73. The Court concludes that the search warrant was not a general warrant and so does not reach the plain view and inevitable discovery questions. It does, however, decide in the alternative that the good faith exception applies.

### A.    Overbreadth

In arguing that the search warrant was overbroad, Githens proffers two different theories: (1) the warrant "sought to seize items unrelated to the crime under investigation, including visual depictions of child sexual exploitation" and (2) the warrant lacked temporal limitations. ECF No. 66 at 7. In practical terms, he says that "there was no basis to search Mr. Githens' phone beyond the messages

11

to the OCE" and "there was no basis to search Mr. Githens' phone beyond the content generated within the limited 10-day period" when he was communicating with the OCE. *Id*. at 21. What he urges, then, is a determination that the search warrant should have only authorized a search for evidence tied to the discreet interactions Githens had with the OCE, and because it sought far more than that, the evidence derived from the search warrant should be suppressed.

Courts in the Ninth Circuit employ a three-part test to decide whether a warrant is overbroad. Specifically, courts are to ask:

> (1) whether probable cause existed to seize all items of a category described in the warrant; (2) whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not; and (3) whether the government could have described the items more particularly in light of the information available[.]

*United States v. Lei Shi*, 525 F.3d 709, 731–32 (9th Cir. 2015). Githens challenges the search warrant here on all three grounds, primarily focusing on the first.

### 1.    Probable Cause

The Fourth Amendment mandates that "all searches . . . must be reasonable" and that "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452. 459 (2011). It is axiomatic that probable cause is met where "there is a fair probability that contraband or evidence of a crime will be found in a

particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Courts are to examine the totality of the circumstances to determine whether there was sufficient probable cause for the issuance of a search warrant. *United States v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984). Indeed, such analysis is not hyper-technical, and is meant to examine whether the issuance of the warrant was "a practical, common-sense decision" based on the supporting affidavit. *Id*. at 503–04.

Factually, the Affidavit certainly proffered probable cause that Githens would have child pornography on his electronic devices. In the very early communications with the OCE, Githens asked, "So you think about taboo every day too?" to which the OCE responded, "Yea. Watch it a lot and a little experience. Wbu[?]" *Id*. ¶ 10. To this, Githens replied, "Me too[.]" While Githens tries to argue that this communication meant that he thinks about taboo every day, not that he also watches it, *see* ECF No. 83 at 5, it is certainly reasonable to interpret "me too" as responding to the last comment—"watch it a lot and a little experience"—rather than only the question about thoughts. And of course watching child pornography suggests possession of it in electronic form.

Similarly, the Affidavit outlined a chat where Githens discussed loving "little puffy pussy lips[,]" ECF No. 41-2 ¶ 11, followed by an exchange that same day about how he had nonetheless "never made out with" a girl, *id*. ¶ 12. To this, the OCE remarked, "I thought you said you liked puffy pussy lips haha" and Githens

13

responded, "I've only seen [them]" "[i]n vids[.]" *Id*. At the hearing, defense counsel argued that there was no use of the word "little" in the Affidavit. While that was true with regard to the exchange about how Githens hadn't been with a female, this wasn't true for the conversation shortly prior, during which the Affiant reported that Githens used the phrase, "little puffy pussy lips." The full context—indeed, the totality of the circumstances—plainly indicates that the two were talking about a minor girl's genitalia. In his Reply, Githens contends that his statement suggesting that the young female genitalia is a "Turn off I guess lol," somehow extinguishes any suggestion that he would have images of such in his possession. *See* ECF No. 83 at 6–7. But again, the full context of the Affidavit paints a different picture, *see*, *e.g.*, ECF No. 41-2 ¶ 17 ("I want to stick my tongue deep in her pussy" and "I am so turned on by smooth puffy lips"); *id*. ¶ 20 ("I would love to cum inside her pussy"), and, as Judge Thurston observed when ruling on the *Franks* motion, "[e]xactly what Githens meant by ["Turn off I guess"] is unclear," ECF No. 54 at 6 n.6.

While the Affidavit itself didn't explicitly mention the *crime* of possession or distribution of child pornography, it did proffer probable cause to believe Githens consumed it. It also incorporated Attachment B as a list of items that "are most often associated with the online enticement of children[,]" and stated that that association was drawn from the special agent's training, experience, and

14

communication with other law enforcement officers. *See* ECF No. 41-2 ¶ 1. Attachment B of course included child pornography as an item to be seized. *See* ECF No. 41-1 ¶ 1 ("[v]isual depictions in any format or medium including still images, videos, films, or other recordings, of child sexual exploitation, including child erotica"). So, by incorporation, the Affidavit stated that child pornography is tied to enticement.

What the Affidavit offered, then, was: (1) a statement that there is an association between child pornography and those who engage in enticement, (2) more than ample factual probable cause to believe Githens had committed the crime of enticement; and (3) sufficient probable cause to believe he would have child pornography on his devices. The Ninth Circuit addressed a similar circumstance in *United States v. Boudreau*, 154 F.4th 1132 (9th Cir. 2025). There, a detective posed as a fictional minor on various social media sites, and the defendant chatted with the undercover detective about having sex with her, eventually setting up a time and place for them to engage in sexual conduct. *Id*. at 1136. Once he showed up where they were supposed to meet and was arrested, the defendant admitted that he consumed "pornography" and had a computer at his home. *Id*. The detective signed an affidavit outlining the communications and this admission, and said that "computers 'are the primary way in which individuals interested in child enticement interact with each other and with intended child

victims,'" that computers allow for access to child pornography, and that those who communicate with children online commonly collect child pornography. *Id*. at 1136–37.

The Ninth Circuit concluded that the district court properly denied the motion to suppress and relied on the affidavit's factual recitation, along with the detective's explanation about how one of the "common characteristics shared by individuals who have a sexualized interest in children and are communicating with children online" is their possession of child pornography. *Id*. at 1140. Similarly here, the Affidavit plainly laid out facts to support probable cause, and although it certainly did not tie enticement to child pornography as concretely as the detective did in *Boudreau*, it at least discussed the association between the two, albeit briefly. Applying *Boudreau* results in the conclusion that the search warrant was indeed supported by probable cause.

The cases Githens cites in support of a different conclusion are less on point. In *Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011), the Ninth Circuit determined that there wasn't probable cause for a child pornography search warrant where: "(1) no evidence of possession or attempt to possess child pornography was submitted to the issuing magistrate; (2) no evidence was submitted to the magistrate regarding computer or electronics use by the suspect; and (3) the only evidence linking the suspect's attempted child molestation to

possession of child pornography is the experience of the requesting police officer,

with no further explanation." *Id*. at 895. Indeed, the facts in that case did not

involve any interaction over digital devices. Here, however, as stated above, there

was a clear connection between the digital communications and the crime, and

some connection between the crime and child pornography. That, coupled with the

obvious factual basis to believe Githens would possess child pornography, renders

*Dougherty* inapposite.

United States v. Needham, 718 F.3d 1190 (9th Cir. 2013), also doesn't

further Githens' cause. There, the affidavit proffered no factual allegation of

electronic communications about sexual relations with children or about child

pornography possession—only that Needham had molested a child in a bathroom,

was a registered sex offender, and that molesters collect child pornography. *Id*. at

1192. The Ninth Circuit concluded that the affidavit in support of searches for

child pornography were lacking because "[l]ike the officers in *Dougherty*, the . . .

officers in this case relied on a warrant predicated on the bare inference that those

who molest children are likely to possess child pornography." *Id*. at 1195.

*Needham*, like *Dougherty*, is easily distinguished because the facts surrounding the

crime under investigation neither referenced child pornography nor involved the

use of electronic devices.

Finally, citing to *United States v. Flores*, 802 F.3d 1028, 1045 (9th Cir. 2015), and *United States v. Adjani*, 452 F.3d 1140 (9th Cir. 2006), Githens contends that the Affidavit is lacking because it doesn't name the crime of child pornography. *See* ECF No. 83 at 6. It is true that *Flores* states that "[i]n *Adjani*, we explained that warrants must specify the particular crime for which evidence is sought." 802 F.3d at 1045 (citing *Adjani*, 452 F.3d at 1148–50). However, *Adjani* explains that "[t]here is no rule . . . that evidence turned up while officers are rightfully searching a location under a properly issued warrant must be excluded simply because the evidence found may support charges for a related crime (or against a suspect) not expressly contemplated in the warrant." 452 F.3d at 1151. Indeed, the *Adjani* opinion noted "that in this case the evidence discovered was clearly related to the crime referred to in the warrant." *Id*. at 1151 (concluding the district court erred by ruling that officers were required to obtain a new warrant when they discovered emails implicating someone who was not the target of the warrant). Applying *Adjani* here, the evidence of child pornography possession was clearly related to the crime of enticement based on the facts presented in the Affidavit. The alleged enticement involved the use of digital devices to communicate about sexually exploiting a child, and those communications

18

referenced child pornography, perhaps not by name, but certainly by modern day jargon (e.g., "vids").[4]

The Court therefore concludes that there was probable cause for the seizure of the items to search for evidence of attempted enticement and possession of child pornography.

### 2.    Objective Standards

Githens also challenges the warrant for leaving it to the agents to determine the contours of the search.  *See* ECF Nos. 66 at 20; 83 at 9.  The Government responds that the warrant did, in fact, limit the scope of the search by, among other things, referring to child exploitation and child erotica as the focus of the items to be seized.  *See* ECF No. 73 at 16.

The Court agrees with the Government.  Attachment B to the warrant lists six different groups of items, most of which specifically address the sexual

---

[4]  Githens' reliance on out-of-circuit cases fares no better.  In *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008), the chat between the undercover officer and the defendant did not reference photos or videos.  *See id*. at 287.  And in *United States v. Falso*, 544 F.3d 110 (2d Cir. 2008), the gist of the Affidavit was that people who "exploit children, including collectors of child pornography, commonly use computers[,]" and that "it appeared" that Falso—who had an eighteen-year-old arrest for molestation that resulted in a misdemeanor conviction—either gained or attempted to gain access to the non-member website www.cpfreedom.com." *Id*. at 113–14 (internal quotation marks and brackets omitted).  That case is therefore distinguishable because of the factual leaps that it made, whereas here, Githens' own statements referred to looking at child pornography.

exploitation of children. *See* ECF No. 41-1 ¶¶ 1, 2, 4a, 4d, 4f, 5. One listed item relates to the fact that Githens said he would bring presents for the OCE's seven-year-old niece when they met. *Id*. ¶ 6 (referring to purchases of dolls and candy). Other items focused on identifying people involved in the crime. *See id*. ¶¶ 4b, 4g, 4i. And still other items addressed the potential hiding or destruction of evidence. *See id*. ¶¶ 3, 4c. To the extent there were items listed that were expansive, *see*, *e.g.*, *id.* ¶ 3, they were necessarily so as "'[o]ver-seizing' is an accepted reality in electronic searching because there is no way to be sure exactly what an electronic file contains without somehow examining its contents." *Flores*, 802 F.3d at 1044–45 (internal quotation marks, brackets, and citation omitted). For these reasons, the Court concludes that the warrants gave law enforcement objective standards by which to seize and search for evidence.

Relatedly, Githens has also not shown that anything seized was "used for any broader investigative purposes." *Flores*, 802 F.3d at 1045. While he may believe that the purpose of the search warrant was to ferret out child pornography, as stated above, the Court doesn't view that as a broader (or even primary) purpose, given the *factual ties* here between the conduct investigated (child enticement) and such images.

### 3.    More Particularized Description

20

Githens also argues that the warrant should have restricted the search to a more particularized description, specifically, that it should have been limited temporally to the ten days during which Githens and the OCE communicated.[5]  *See* ECF Nos. 66 at 20–21; 83 at 8–9.  The Government responds that such a restriction is unnecessary for digital devices, citing to *Adjani*, *Flores*, and *United States v. Dallmann*, 2024 WL 2700759 at *7.  ECF No. 73 at 14–15.

The Court concludes that a temporal restriction here would have limited law enforcement's ability to uncover relevant information and so refuses to endorse one.  *See id*.  In *Adjani*—an email extortion case—the Ninth Circuit considered whether a more restrictive search of email accounts utilizing, for example, search terms or particular addressees, would have been reasonable.  452 F.3d at 1149.  The court determined otherwise, concluding that doing so "would likely have failed to cast a sufficiently wide net to capture the evidence sought[,]" and pointing to the reality that law enforcement is already "limited by the longstanding principle that a duly issued warrant, even one with a thorough affidavit, may not be used to engage in a general, exploratory search." *Id*. at 1149–50.

---

[5]  Although it's not clear whether Githens raises this temporality argument as part of prong two or prong three of the overbreadth test, the Court views it as most neatly fitting under the third prong.

21

As *Adjani* observes, "[t]he reasonableness of a search or seizure depends not only on when it is made, but also on how it is carried out." *Id*. at 1150 (internal quotation marks and citation omitted). In that vein, Githens doesn't outline for the Court what evidence would not have been discovered—or in other words, should be suppressed—if the proposed temporal limitation had been employed. Further, he fights against any sort of severance here, saying that "every relevant category is not supported by probable cause, is overbroad, or lacks particularity." ECF No. 83 at 9. So, even assuming there should have been some sort of temporal limitation, Githens isn't promoting a surgical approach to suppression here and the Court can not engage in one without more facts as to what evidence should be suppressed.

For the foregoing reasons, the Court concludes that the search warrant was not overbroad.

## B.    Good Faith

Even if the Court were to determine that the warrant was overbroad, it would nonetheless decline to suppress any evidence based on the good faith exception. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that suppression is not the appropriate remedy where law enforcement objectively and reasonably "reli[ed] on the magistrate's probable-cause determination[.]" *Id.* at 922. "Good faith reliance exists if the agents' affidavit establishes 'at least a colorable argument for probable cause,' and the agents relied on the search warrant

in an objectively reasonable manner." *United States v. Shi*, 525 F.3d 709, 731 (9th Cir. 2008) (quoting *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006)).  So, exceptions to the good faith rule arise where: (1) the "officers' reliance on the warrant was not objectively reasonable"; (2) the issuing authority "wholly abandoned his judicial role"; or (3) "the officers acted in bad faith by misleading the magistrate judge." *United States v. Huggins*, 299 F.3d 1039, 1044 (9th Cir. 2002) (internal quotation marks, citations omitted).

Here, Githens doesn't argue that the Chief Magistrate Judge did anything wrong, and his *Franks* motion was denied.  *See* ECF No. 4 at 7–8 ("The Court cannot find that the agent made any omission in the affidavit.").  Because the Court has determined that there was probable cause for the warrant, and that it was not overbroad, to the extent that decision may be interpreted as a close call, the good faith doctrine supports denial of the Motion.  *See United States v. Hove*, 848 F.2d 137, 139 (9th Cir. 1988) ("The test for reasonable reliance is whether the affidavit was sufficient to 'create disagreement among thoughtful and competent judges as to the existence of probable cause.'" (quoting *Leon*, 468 U.S. at 926)).  In other words, the Court finds that the agents objectively reasonably relied on the Chief Magistrate Judge's decision to issue the search warrant.

23

Alternatively, then, the Court DENIES the Motion on good faith grounds and need not reach the Government's other arguments (i.e., that the items recovered would have been inevitably discovered or were found in plain view).

### III.    CONCLUSION

For the foregoing reasons, the Motion is DENIED.  The evidence obtained pursuant to the search warrant is not suppressed on Fourth Amendment grounds.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, November 24, 2025.



Jill A. Otake
United States District Judge

CR. NO. 23-00089 JAO-BAM-1, *United States v. Rodger Githens*; ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS ON THE GROUNDS THE WARRANT LACKED PARTICULARITY AND WAS OVERBROAD (ECF NO. 65)