ERIC GRANT
United States Attorney
DAVID GAPPA
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000

McKENZIE HIGHTOWER
Trial Attorney
U.S. Dept. of Justice, Criminal Division
Child Exploitation and Obscenity Section
1301 New York Avenue NW, 11TH Floor
Washington, DC 20005
Telephone: (202) 215-7126

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>                    v.<br><br>RODGER GITHENS,<br><br>                              Defendant. | CASE NO.  1:23-CR-00089-JAO-EPG<br><br>UNITED STATES' SENTENCING MEMO<br><br>DATE: July 24, 2026<br>TIME: 9:00 a.m.<br>COURT: Hon. Jill A. Otake |

## I.    INTRODUCTION

The United States, by and through its attorneys Eric Grant, United States Attorney, David Gappa, Assistant United States Attorney, and McKenzie Hightower, Trial Attorney, submits this sentencing memorandum to aid the court in arriving at the most appropriate sentence in this case.  That sentence should include a term of imprisonment of at least 365 months, a lifetime term of supervised release, and a money judgement for $75,000.

## II.    PROCEDURAL HISTORY

The government filed a criminal complaint against Githens on April 20, 2023, that alleged receipt and distribution of material involving the sexual exploitation of minors in violation of 18 U.S.C.

GOVERNMENT'S SENTENCING
MEMORANDUM

1

§ 2252(a)(2). ECF No. 1. A grand jury returned a two-count indictment on October 16, 2025, charging Githens with attempted coercion and enticement in violation of 18 U.S.C. § 2422(b) and receipt and distribution of material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2). ECF No. 78.  Githens pleaded not guilty and was ordered detained on April 20, 2023, by Magistrate Judge Carolyn Delaney, as a danger to the community and risk of flight.  ECF No. 6.

Githens retained his current counsel and filed a motion for bail review on May 31, 2023.  ECF No. 19.   The court held a hearing on the defendant's motion, permitted the defendant to file supplemental briefing, and then denied the motion by written order issued on July 10, 2023. ECF No. 31.  Notably, Magistrate Judge Barbara McAuliffe found that there was clear and convincing evidence that Githens was a danger to the community.  She characterized the defendant's statements to the undercover Federal Bureau of Investigation (FBI) agent as "extreme" and found that "the risk of danger to the community is too high" for "an individual who has expressed pervasive sexual interest in children." *Id.* at 6-7.

Githens filed a motion to suppress evidence that had been seized when a search warrant was executed on April 19, 2023.  ECF No. 40.  He attacked the affidavit that supported the federal search warrant and argued that the FBI agent had omitted material facts that undermined probable cause to believe a crime had been committed.  He also argued that he had engaged in protected speech under the First Amendment and that cancelling the scheduled meeting with the undercover agent and ending communication with him further negated any criminal culpability.  *Id*.  Judge Jennifer Thurston heard argument on the defendant's motion on May 20, 2024, and denied it in a written order issued on May 23, 2024.  ECF Nos. 52 and 54. Judge Thurston rejected the defendant's argument that the search warrant affidavit had material omissions and that Githens had merely engaged in protected speech. *Id*.

Githens filed a second motion to suppress evidence on August 7, 2025, and argued that the search warrant lacked particularity and was overbroad.  ECF Nos. 65 and 66.  He argued that the affidavit did not establish a nexus between his criminal conduct and "the broad array of data sought by the warrant because the warrant lacked temporal limitations and sought to seize items unrelated to the crime under investigation, including visual depictions of child sexual exploitation."  ECF No. 66 at 7:15-19.  This court heard argument on the motion on November 17, 2025, and denied it by written order on

GOVERNMENT'S SENTENCING MEMORANDUM

2

November 24, 2025.  ECF Nos. 85 and 86.

Githens proceeded to trial on March 23, 2026, and this court found him guilty of both counts in written findings of fact and conclusions of law on May 1, 2026.  ECF Nos. 101 and 105.  More specifically, this court found that Githens violated Count One, Attempted Coercion and Enticement, because, "[he] suggested he 'would love to have a dad or uncle invite me[,]' . . . inquired about logistics, such as how often and how far in advance the UC babysits his niece . . . and described in graphic detail what he wanted to do to the niece . . . He repeatedly denied that this was all a fantastical exercise . . . and discussed specific dates and times to meet." ECF No. 105 at 12.  This court also found that Githens violated Count Two, Receipt and Distribution of Child Pornography:

> What remains for the Court to decide is whether Githens knowingly received and distributed such images [child pornography]. . . The facts here support the conclusion that Githens knew that the people in the images he received and distributed were minors engaged in sexual activity. The distribution and receipt of the images here did not occur in a vacuum: the record is replete with Defendants' statements about his sexual interest in children and examples where he either engaged in sexual contact with children or tried to do so.

*Id*. at 16. The court has also entered a preliminary order of forfeiture. ECF No. 108.

### III.   FACTUAL HISTORY

Githens engaged in child exploitation crimes for an extensive time including receiving and/or distributing images of child sexual abuse for approximately a decade before his arrest in this case.  The government intends to file under seal representative samples of some of this contraband, because only by fully understanding his offense conduct can the court completely grasp the danger that he will continue to present to children.  Government Sentencing Exhibits 1-C-1 and 1-C-2.

Githens has demonstrated his sexual interest in minors in various ways, including by encouraging the sexual abuse of minors by adults.  As one example, beginning in July of 2020, Githens exchanged thousands of Telegram messages across two conversations with Juan Quevedo Tj Colombia.  Government Sentencing Exhibit 1-D. User Juan Quevedo Tj Colombia was a person who had direct access to minors whom he said were 6 and 12 years of age.  Githens encouraged Juan Quevedo Tj Colombia to engage in sexual activity with the minors, record the abuse, and send videos and pictures of the interactions to Githens.  There were 188 attachments exchanged between the users within their chats, but almost all of the content is not viewable at this time. Below are excerpted translations (Spanish to

GOVERNMENT'S SENTENCING MEMORANDUM

English) of some of the messages between the users:

| 7/10/2020 | Juan Quevedo Tj Colombia | I sucked the ass of that boy from the last time<br>He only let me do that<br>And that was it, because his family showed up<br>That boy likes me to suck his ass, love<br>The downside is that the family showed up and I didn't get to do anything else |
|---|---|---|
| | GITHENS | Yummyyyy<br>Did you go to His house? |
| | Juan Quevedo Tj Colombia | Yes, love, I went to his house. |
| | GITHENS | Yummy<br>Is it the same one as before? |
| | Juan Quevedo Tj Colombia | Yes, love<br>But I only sucked his ass<br>And just when I was sucking it the family showed up |
| | GITHENS | He-he<br>How old is he? |
| | Juan Quevedo Tj Colombia | He said he is 17 years old |
| | GITHENS | How old do you think he is? |
| | Juan Quevedo Tj Colombia | Around 15 years old, because he still has a childlike face, love |
| | GITHENS | Does his childlike face excite you? |
| | Juan Quevedo Tj Colombia | Yes, it excites me, love |
| | Juan Quevedo Tj Colombia | No, love, no, you see that he didn't let me take photos |
| 7/13/2020 | GITHENS | Love, I want to see you and S[redacted] naked<br>Together<br>:) |
| | Juan Quevedo Tj Colombia | I want it to become a reality already 😜 |
| | GITHENS | He wants to touch your penis |
| | Juan Quevedo Tj Colombia | I'm sending you many photos |
| | GITHENS | Yesss<br>I want to see everything |
| | Juan Quevedo Tj Colombia | I'll tell him, I will make videos, love |
| | GITHENS | Are you going to have time alone with him?<br>Where can you play with him? |
| | Juan Quevedo Tj Colombia | Do you recall that I told you that they are going to rent me<br>A room |
| | GITHENS | You guys can take a nap naked |

GOVERNMENT'S SENTENCING MEMORANDUM

4

| | | |
|---|---|---|
| | Juan Quevedo Tj Colombia | Yes, love, he has to get used to it |
| | GITHENS | So that it feels very normal |
| 9/14/2020 | GITHENS | The children are beautiful |
| | Juan Quevedo Tj Colombia | They are beautiful, love<br>I want it to be a romance and a fantasy for us |
| | GITHENS | You do? ;)<br>How old are they? |
| | Juan Quevedo Tj Colombia | S[redacted] 6 and the other one 12, love<br>I want us to win him over<br>I want a threesome with the two of them and with you |
| | GITHENS | Yess<br>It would be very beautiful<br>Do you think he's curious? |
| | Juan Quevedo Tj Colombia | Yes<br>He's looking at my penis a lot today |
| | GITHENS | Nice |
| 9/15/2020 | Juan Quevedo Tj Colombia | Yes, love, I hope I can spend a lot of time with them and teach them to kiss and<br>Touch each other and me, too |
| | GITHENS | Yess<br>I think it will be very beautiful |
| | Juan Quevedo Tj Colombia | Love, and do you miss us? |
| | GITHENS | Yes, love:( |
| | Juan Quevedo Tj Colombia | We miss you, too<br>And are you going to masturbate? |
| | GITHENS | Maybe, and you? |
| | Juan Quevedo Tj Colombia | As well, love<br>How yummy<br>I want to suck your ass and smell it<br>For S[redacted] to see us naked<br>And sense the smells |
| | GITHENS | Yess |
| | Juan Quevedo Tj Colombia | I want you to show the cum that is ours<br>I want to put your cum on S[redacted] |
| | GITHENS | How yummy<br>Did you do it in front of S[redacted] |
| | Juan Quevedo Tj Colombia | Yes, amor |
| | GITHENS | Wow<br>Uff |
| 11/3/2020 | GITHENS | Are you going to be alone with them? |
| | Juan Quevedo Tj Colombia | Yes, today I'm going to be alone |

GOVERNMENT'S SENTENCING MEMORANDUM

5

| | GITHENS | Are you going to find a hidden place or what? |
|---|---|---|
| | Juan Quevedo Tj Colombia | Yes, the bathroom is far away |
| | GITHENS | Oh, yes<br>Can all three go? |
| | Juan Quevedo Tj Colombia | Yes, the 3 of us can go |
| | GITHENS | Do you think it's better to do it with one or both? |
| | Juan Quevedo Tj Colombia | I am going to leave cum on myself so he smells the cum<br>Yes, I'm going to do it; I'm going to show them a video of yours with your dick |
| | GITHENS | Yess<br>So they know it's natural |
| | GITHENS | Are you going to ask them to suck you? |
| | Juan Quevedo Tj Colombia | I want to touch them, smell their ass |
| | GITHENS | Uff |
| | Juan Quevedo Tj Colombia | That excites me |
| | GITHENS | Can you record it for me? |
| | Juan Quevedo Tj Colombia | I want to see you with the cum so I can come too<br>I'm going to record a little when I am touching them |
| | GITHENS | Yes, love<br>Are you going to say it's for me? |
| | Juan Quevedo Tj Colombia | Yes, of course, they know about you<br>And I'm going to show them your dick<br>I'll tell them, look at these videos |

While he chatted with Juan Quevedo Tj Colombia, Githens also exchanged CSAM with other offenders, including "Rio14," in October of 2020. PSR at ¶ 26. The videos included toddlers being penetrated by adult men. During this exchange, "Rio14" wrote, "liked it let's exchange more?" Githens replied in the affirmative and also asked, "You have younger?" *Id*. Government Sentencing Exhibit 1-E.

A year later, in October of 2021, Githens exchanged graphic messages showing a sexual interest in children with the user "H S:"

GOVERNMENT'S SENTENCING MEMORANDUM

6

| GITHENS | I raped an Asian kid a year ago. He was 17. |
|---|---|
| H S | Asians always looks younger than their age that's hot. How you rape him. |
| GITHENS | He looked 12. Was a virgin and said he couldn't be fucked. I was eating his ass and took what was mine. Forced it in and he tried pushing me away. I pushed him back and kept going. He was screaming and crying. I had to cover his mouth. He was crying most of the time. But I held him after and he thanked me for not stopping. |
| H S | So are you down to rape one with me. Like a team work. |
| GITHENS | Yeah man. . . How old you thinking? |
| H S | The most young That we can have. Maybe when walk from school to home. Offer some candy. That will sound bad but what about immigrants? A lot kids are crossing alone the boarder haha |
| GITHENS | Oh yeah I've thought about that. You think like me. |

Government Sentencing Exhibit 1-B. In addition to this conversation, "H S" also sent Githens three videos of CSAM on May 10, 2022. *Id*. In the videos, a toddler can be seen being anally penetrated by an adult male. *Id*. The child can be heard crying and screaming in the videos. After receiving these disturbing videos, Githens responded, "Oh yes I've seen him before. He seems like he needs it harder." Government Sentencing Exhibits 1-C, 1-C-1, 1-C-2.

Githens continued to feed his desire for the sexual exploitation of children in 2022. He exchanged 137 messages with "Allegedly 42 hisp daly city" between January 28, 2022, and February 18, 2022.  Government Sentencing Exhibit 1-A.  Githens stated that he would want to engage in a "perv session"[1] with the other user:

---

[1] A "perv session" apparently occurs when like-minded offenders meet in person to view child sexual abuse material and/or engage in sexual activity.

GOVERNMENT'S SENTENCING MEMORANDUM

7

| | |
|---|---|
| Allegedly 42 hisp daly city | Oh sorry, understood lol.  5+ tho my sweet spot is like 9-13.  Wbu?? |
| Githens | I'm into that age and under |
| Allegedly 42 hisp daly city | Hot!!! I get off on guys getting off on really young. You into just boys or both? |
| Githens | Both you? |
| Allegedly 42 hisp daly city | Same concept as under 5……I'm only into boys myself but I LOVE watching Dad/girl stuff because of how much it turns on my buddies. Plus I do love those because the dads tend to be young super hot guys with HUGE cocks that show absolutely no mercy 😈 |
| Githens | Haha you like the crying? |
| Allegedly 42 hisp daly city | Nah not my thing.  I take it you do?? That's hot |
| Githens | Can be hot Hehe You ever had Young? |
| Allegedly 42 hisp daly city | Not since I was also young, with a neighbor.  And even then youngest was when we were both 9 Have you? I'd love to someday tho |
| Githens | When i was a teenager Was 5 |
| Allegedly 42 hisp daly city | So Hot!!!! Lucky lol |
| Githens | I loved it You know any guys with access? |
| Allegedly 42 hisp daly city | Well first, remind me if you would ever be down to come down to SF and have a perv session with me and my buddy? 😊 |
| Githens | I would What's your buddy like? |
| Allegedly 42 hisp daly city | White in his 40s as well with a HUGE collection |
| Githens | Nice man Does he fuck anyone? |
| Allegedly 42 hisp daly city | Not YET lol he has a nephew who lives out of state so maybe someday 😋 |
| Githens | How old? |
| Allegedly 42 hisp daly city | I believe 11 😳 |
| Githens | Nice |

Government Sentencing Exhibit 1-A.

GOVERNMENT'S SENTENCING MEMORANDUM

Beginning on March 25, 2023, Githens contacted an FBI online undercover employee (OCE). The OCE had created an undercover account on Grindr, a location-based internet social networking and dating application. PSR at ¶ 7. The undercover FBI agent had established a Grindr account with a profile for a 30-year-old white male, located near Fresno, California, who was a "taboo-friendly" uncle. The agent placed tags on the account such as "dirty, discreet, curious, and parent." *Id*. Githens contacted the undercover agent less than one hour after the undercover account had been created by searching for the tag "Parent." Githens quickly directed the undercover agent from Grindr to Telegram, a fully-encrypted platform that Githens considered more secure. Githens communicated almost exclusively on Telegram with "secret" chat enabled, and this allowed him to know if the other person was recording the communications. During their initial Telegram chats, the OCE advised Githens that he had a seven-year-old niece with whom he was sexually active. PSR at ¶ 9. They engaged in a long conversation in which Githens advised he wanted to feel her (the OCE's niece) getting "WET." PSR at ¶ 11. Githens also wrote that the OCE should try to get her to orgasm. *Id*. Githens also claimed he knew that boys that age could orgasm, "They moan and stuff. Shake etc. Dry cum." *Id*.

Githens and the OCE planned for Githens to travel to Fresno, California, to meet with the OCE. PSR at ¶ 13. However, after making arrangements to meet with the OCE, Githens stopped communicating with him, and eventually told the OCE, "I'm going to need to cancel for this week." *Id*. Githens committed to and then cancelled several more potential meetings with the OCE and his niece. PSR at ¶ 14-15. On April 19, 2023, FBI seized Githens devices and at least 555 image files and 87 video files depicting CSAM were recovered from Githens' iPhone.[2]

### IV.   PSR OBJECTIONS

The government filed informal objections to the draft PSR. The probation office corrected the report to appropriately account for a five-level increase to the base offense level under U.S.S.G. § 2G2.2(b)(3)(B) for distribution of CSAM images for valuable consideration (other CSAM). But the report still inappropriately recommends a two-level reduction for acceptance of responsibility under

---

[2] The PSR at ¶ 27 references lower numbers of images, but that was based on incomplete information. Notably this does not represent the full number of still and video images of CSAM that Githens received and distributed in part because he used self-destruct timers to delete content as well as encryption to prevent others, including law enforcement, from accessing his contraband.

U.S.S.G. § 3E1.1.  The government also objected to the probation office sentencing recommendation. The government's formal objections have been filed in a separate document so are not repeated here.

## V.     RELEVANT SENTENCING FACTORS AND GOVERNMENT RECOMMENDATION

The considerations at 18 U.S.C. § 3553(a)(1) through (6) justify a sentence that includes a term of imprisonment of at least 365 months followed by a lifetime term of supervised release.

### A. The nature and circumstances of the offenses, the history and characteristics of the defendant, and the need to protect the public.

The nature and circumstances of the offense and the history and characteristics of the defendant weigh in favor of a custodial sentence of at least 365 months. Githens engaged in child exploitation crimes for an extended period of time, with multiple people, leading to multiple victims, and with no end in sight.  Githens primarily has focused on the Telegram secret chats with the OCE in this case, but Githens makes almost no mention of the other individuals with whom he shared his sexual interest in minors, including encouraging Telegram user Juan Quevedo Tj Colombia to engage in sexual activity with two minors.  Nor does he discuss any claim to have raped a child or his interest in finding another child to rape.   This conduct, which started years before finding and chatting with the undercover FBI agent illustrates that Githens has had a consistent and egregious sexual interest in very young and very vulnerable children.[3]

This pattern of encouraging the sexual abuse of minors is also seen in the conversation he had with the OCE. Githens said, "I played with my husband's nephew when he was 11 and then a few weeks later he got caught having his 5 yo cousin suck him lol I felt bad but proud of him too." PSR ¶ 9. Later in the conversation Githens referred to his husband's nephew getting caught with the 5-year-old again and said, "I wanted to take at least some of the credit for that ;)." *Id*. These conversations illustrate that Githens derived pleasure from getting children to sexually abuse other, even younger, minors.

---

[3] The court can note Githens's comment to the probation officer that his worst offense conduct was sending CSAM videos.  While that is obviously gravely serious conduct, he does not address his stated interest in personally raping children or having personally engaged in physical sexual abuse of more than one minor and why that would be less serious criminal conduct.

GOVERNMENT'S SENTENCING MEMORANDUM

10

The CSAM in which Githens trafficked also shows the seriousness of his conduct and the need for a significant sentence. On May 10, 2022, Githens received CSAM of a toddler being anally penetrated from "H S." Government Sentencing Exhibit 1-C. The toddler's face is visible, screwed up in pain as he screams and cries. Githens responds that he recognized the toddler in the video and that the toddler should be raped even harder. "H S" says, "That is music for my ears." Even among those that have a sexual interest in children, videos of the rape of children as young as three or four are not common.[4] Githens's receipt of these videos, his recognition of the minor in the videos, and his enthusiastic response indicates that he was far deeper into the world of CSAM than he has been willing to reveal to his retained psychologist/psychiatrist, the probation office, and the court.

In an attempt to mitigate his sentence, Githens has provided a psychological evaluation from Dr. A.A. Howsepian (Howsepian Report) that concludes that Githens does not have a pedophilic interest. But there are several significant flaws with the report and its conclusions. First, Dr. Howsepian apparently did not review any of the chats showing a sexual interest in minors other than the conversation with the OCE.  All of the defendant's chat communications have remained available through the discovery process from the time when retained counsel entered his appearance.  This means Howsepian was not aware of Githens' consistent and clear admissions to multiple individuals that he had sexually abused minors in real life. Such evidence would have caused the Static 99R test score to increase by two points for a male victim and an unrelated victim. Second, Howsepian only used the Static-99R in combination with the cursory application of one tool designed to measure dynamic risk factors.  As a result, Howsepian concluded that Githens is a "low" risk to reoffend. As Dr. Susan Napolitano has explained in her report, "static tools <u>must</u> be supplemented with dynamic risk measures that capture current functioning, treatment progress, sexual interests, attitudes, and self regulation." Government Sentencing Exhibit 2-A. Dr. Napolitano has explained the flaws in the superficial use of one tool for dynamic risk assessment.  Dr. Howsepian's application of the Sexual Violence Risk-20 V2

---

[4] S. Sentencing Comm'n, *Non-Production Child Pornography Offenses*, at 31 (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf.

GOVERNMENT'S SENTENCING MEMORANDUM

11

(SVR-20 V2) was inadequate and consistent with an overall pattern of advocacy and overreliance on the defendant's unchallenged and unverified self-reporting.

Githens is a danger to the public due to his pedophilic disorder. Dr. Napolitano analyzed the same evidence as Dr. Howsepian, but she requested additional information once she saw concerning indicators of apparent pedophilic disorder and concluded that Githens has a pedophilic interest. Her report states:

> The defendant's decade-long consumption of CSAM is one of the strongest behavioral indicators of pedophilic sexual interest. Individuals who repeatedly view prepubescent CSAM typically do so because the material aligns with their sexual arousal patterns. The defendant admitted to viewing such material for more than ten years, including prepubescent content. This chronic pattern is incompatible with his later claim to Dr. Howsepian that he has no sexual interest in children. His statement to the doctor that he envisioned himself as the abused child, rather than the offending adult, is irrelevant to the diagnosis of Pedophilic Disorder.

> Dr. Howsepian concluded that the defendant does not have sexual interest in prepubescent children and instead has Masochistic Disorder and suffers from an array of other mental illnesses and Adverse Childhood Experiences (ACES). His conclusions rest heavily on the defendant's self-report, even when contradicted by objective evidence. A more comprehensive evaluation would have included a more thorough review of specific crime details, including the content of his online sexual chat communications. He did not ask if there was additional evidence of crimes against children thus limiting his ability to evaluate the full behavioral context of the defendant's deviancy. The defendant told the doctor that all his admissions, chats, and statements about molestation and sexual interest in children were "fantasy," yet he made such claims to multiple individuals across different platforms. This pattern suggests that the statements were not isolated or situational but reflected underlying sexual interest consistent with Pedophilic Disorder. The consistency of his disclosures of past hands-on offenses warrant serious consideration of whether he was lying to the doctor during the evaluation or lying to the people he engaged with online.

Government Sentencing Exhibit 2-A at 2.

Dr. Napolitano has also opined that Dr. Howsepian should have explored a diagnosis of Sexual Sadism Disorder more thoroughly. She also noted the following:

> [Githens'] apparent sexualization of pain, coercion, fear, and victim suffering is of clinical concern. In one conversation, the defendant described forcing sexual intercourse on an individual he claimed looked approximately twelve years old, stating that the victim cried, screamed, attempted to resist, and had to have his mouth covered. Rather than expressing remorse, the conversation shifted into discussion of committing similar acts against younger victims. In another exchange involving videos depicting a toddler being sexually assaulted while crying and screaming, the chat history indicated that he said that the child "needs it harder." In a separate discussion regarding child sexual abuse material, the defendant acknowledged that a child's crying "can be hot." These statements are notable because they involve sexualized responses not merely to children, but to pain, distress, fear, resistance, and suffering.

Government Sentencing Exhibit 2-A at 3.

GOVERNMENT'S SENTENCING MEMORANDUM

12

Had Githens been properly evaluated, the results would align with what is obvious to any person with or without advanced training and practice in psychology or psychiatry: the defendant is dangerous based on his history and characteristics as a person with a longstanding and demonstrated interest in seeing and hearing children being sexually abused. And his history and characteristics as a sex offender warrant a lengthy term of incarceration to protect the public. A prison term of at least 365 months with sex offender treatment that continues during a lifetime term of supervision will not eliminate the defendant's sexual interest in minors, but it should provide him with sufficient insights and techniques to help reduce the risk that he will continue to present to the public, particularly towards babies, toddlers, and other young and vulnerable children. A lifetime term of supervised release is warranted so that he participates in sex offender treatment, is obligated to register as a sex offender, and also participates in any other treatment that his supervising probation officer might recommend as beneficial. His access to minors, computers, and the internet also should be restricted and subject to the supervision of a probation officer during this time. As the court knows, should the defendant perform well on supervision, he can move the court to terminate early that aspect of his sentence.

Finally, the probation office and the defense point to Githens' allegedly difficult childhood as a factor in seeking a downward variance. But a difficult childhood does not negate the deliberate and repeated actions he took to sexually exploit children. To the extent that Githens suggests there is a correlation between being a victim of physical abuse and his later engaging in prolonged child exploitation crimes, the government disputes that correlation. Dr. Napolitano concluded that these experiences are not necessarily correlated as well:

> ACEs are relevant to understanding aspects of the defendant's developmental background, but ACEs do not cause or excuse sexual offending, do not diminish responsibility, and do not meaningfully reduce risk. Most individuals with significant childhood adversity do not develop deviant sexual interests or commit sexual offenses, and ACEs do not distinguish paraphilic from non-paraphilic offending. Trauma-focused treatment may improve emotional functioning, but it does not mitigate sexual recidivism risk when other established dynamic risk factors—such as deviant sexual interests, sexual compulsivity, and offense-supportive attitudes—are present. In this case, the defendant's ACEs do not alter the risk picture created by his long-term CSAM use, admissions of molestation, sexually explicit chats with minors, and encouragement of abuse.

Government Exhibit 2-A at 4.

And correlation should not be mistaken for causation. The notion that the challenges faced by Githens in his life are a justification or mitigating factor for his crimes simply minimizes his own

GOVERNMENT'S SENTENCING MEMORANDUM

13

volitional conduct as a mature and well-educated adult, and it denigrates others who have had similar life obstacles but never committed such heinous crimes. Indeed, Githens points to a family member who might have experienced everything to which Githens was exposed as well as physical sexual abuse. Fortunately, there is no indication that that person went on to commit crimes, much less heinous crimes against children.

Every individual confronts challenges in life, some more severe, some less severe. But no challenge excuses or mitigates the vile offenses committed by Githens. The victims of his crime—children subjected to and forever scarred by the predation of adults—are the ones who experience challenges beyond imagination. The government has forwarded to the probation office impact statements from several of the victims whose images Githens enjoyed watching. The challenge in attempting to reconcile the sexual satisfaction that Githens derived from the suffering of his victims supports a very lengthy custodial sentence for Githens. He cannot fairly blame his poor adult decisions on alleged adverse childhood experiences while concurrently pointing to his alleged successes and accomplishments as a professor with a Ph.D. and a master's degree who earned an endowed chair at University of the Pacific before starting his own private consulting business.[5] Even though he points to academic and professional success, he did so as a deeply flawed and sexually deviant person. He devolved from having sex with hundreds of men, many anonymously, to seeing images of children being sexually abused, to seeking videos of more egregious and violent abuse, to wanting to sexually abuse children by himself, to encouraging others to sexually abuse children, to fantasizing about raping children with other offenders. Fortunately, law enforcement was able to intervene before Githens' downward spiral caused even greater damage to additional victims. He is an extremely dangerous offender who needs to be held fully accountable for his crimes.

///

///

///

---

[5] The letter from Kari Kelso, a former student and Ph.D. advisee of Githens, casts serious doubt on his academic and professional prowess. She addresses his poor performance as an academic, his repeated and bizarre attempts to interact with young children while ostensibly teaching students online, and how disruptive his case has been to her professional activities. Government Sentencing Exhibit 3.

GOVERNMENT'S SENTENCING MEMORANDUM

14

**B. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and provide the defendant with necessary educational training, medical care, or other correctional treatment.**

These sentencing factors weigh in favor of a sentence that includes a prison term of at least 365 months followed by a lifetime term of supervised release.  The defendant would benefit from participating in a lengthy program of sex offender counseling and treatment, and this would best be done within the confines of a BOP facility.  Each BOP institution has counseling resources available, and each region also has at least one designated sex offender management and treatment program.  There is also at least one residential treatment program available for inmates who are concluding their custodial sentences.  Imposing the prison term recommended by the government would provide the defendant with just punishment, afford adequate deterrence to him and others, and provide him the necessary treatment he needs for his pedophilic disorder.  Given his recent chronic use of marijuana, he would also benefit from participating in substance abuse treatment.

**C. The kind of sentences available and the sentencing ranges established.**

These factors also weigh in favor of the sentence recommended by the government, because the range for sentencing is a prison term of between 10 years and life. Probation is expressly precluded by statute under 18 U.S.C. § 3561(a)(2).  The prison term recommended by the government should incapacitate the defendant until he reaches an age at which his risk to the public, assuming he successfully participates in treatment, is diminished significantly.[6]

**D. Any pertinent policy statements by the Sentencing Commission.**

Although many defendants and some courts have criticized the punishments for federal child sexual exploitation offenses, Congress has not relented in legislating in this area.  Congress enacted the

---

[6] In addition to the cases referenced in section E below, the government points the court to the case of *United States v. Schales,* 1:05-cr-00385-JLT for the proposition that sexual interest in children can, at times, persistent for decades, even after significant periods of incarceration. Schales was 45 years old when he was caught surreptitiously taking photographs of a 14-year-old girl.  Law enforcement discovered that he also had acquired a large collection of child sexual abuse images.  After a trial, a judge in Fresno sentenced Schales to serve a prison term of 210 months followed by a lifetime term of supervised release.  The Ninth Circuit affirmed Schales' sentence. *See United States v. Schales*, 546 F.3d 965 (9th Cir. 2008).  The defendant was sentenced to prison again in 2025 and 2026, in his mid-sixties, for supervised release violations based on unauthorized access to the internet and pornography.

GOVERNMENT'S SENTENCING MEMORANDUM

15

Justice for Victims of Trafficking Act of 2015, Pub. L 144-22, on May 29, 2015. Notably, too, although the Sentencing Commission made some adjustments to provisions of USSG § 2G2.2 effective November 1, 2016, most of the provisions were not changed. And on December 7, 2018, Congress enacted the Amy, Vicky, and Andy Child Pornography Victim Assistance Act (AVAA) designed to facilitate compensation for victims such as the victims in this case. Moreover, although the Sentencing Commission has recently amended the Guidelines to eliminate downward departures, the Commission's position had been that downward departures for "child crimes and sexual offenses," including the offenses for which the defendant is being sentenced, were strongly discouraged. This only underscores that Congress and the Sentencing Commission generally believe that the range for sentencing in a case such as before the court is not unduly harsh. Thus, these factors weigh in favor of the sentence recommended by the government.

**E. The need to avoid unwarranted sentencing disparities.**

Many defendants sentenced in the Fresno division of the Eastern District of California have received sentences consistent with the government's recommendations in this case for conduct related to sexual exploitation of children. It is always difficult to compare outcomes of sentencings in different cases, because the sentence in each case is dependent on its own facts and the considerations unique to a defendant. But below is a partial list of sentences in cases involving defendants convicted for offenses related to the sexual exploitation of children. Notably, most of the defendants never filed a motion to suppress evidence or went to trial but instead pleaded guilty and waived appellate rights.

Matthew Sheffield cr-19-180
- Sexually exploited two victims by creating images of the abuse
- Pleaded guilty with full appellate waivers
- Sentenced to statutory maximum of 60 years imprisonment at age at age 41

Christopher Millican cr-20-40
- Defendant was on active duty in U.S. Navy
- Defendant obtained sexually explicit images of a 15-year-old female through Snapchat
- Defendant had wife with health issues and two young children
- Ninth Circuit affirmed 47 ½ year prison sentence and lifetime supervised release term

Shawn McCormack, cr-11-324
- Defendant was 31 years old
- Convicted for two counts of kidnapping and sexual exploitation of two minors
- defendant removed the two victims from their residence while their parents were sleeping and created still and video images of the victims

GOVERNMENT'S SENTENCING MEMORANDUM

16

- sentenced to life imprisonment

Steven Arthur / Jennifer Thurman, cr-08-00058
- defendants were 34 and 35 years old
- defendants created video images of themselves sexually abusing four minor victims during a three-month period
- each sentenced to 120 years federal custody; Thurman's sentence upheld by Ninth Circuit; Arthur did not appeal
- state sentences of 73 and 75 years

Jacob Blanco cr-17-140
- Multiple victims
- Pleaded guilty to five sexual exploitation of minor charges and one distribution charge
- Sentenced to 55 years imprisonment at age at age 29 but preserved his right to appeal a motion to suppress evidence
- convictions and sentence affirmed by Ninth Circuit

Nikko Perez  cr-18-211
- Multiple victims exploited through Snapchat and LiveMe
- Confessed when a search warrant was executed and *pleaded guilty without filing any motions and agreed to full appellate waivers within six months of case filing*
- Sentenced to 40 years imprisonment at age 27

Andrew Sarnowski cr-20-169
- Pleaded guilty to one count of sexual exploitation and one count of receipt or distribution of child sexual abuse material
- One victim
- Sentenced to 40 years imprisonment at age 25

Anthony Rodriquez cr-20-236
- One victim
- Pleaded guilty to one count of sexual exploitation and one count of distribution of child sexual abuse material
- Sentenced to 45 years imprisonment at age 34

Matthew Goyder cr-20-212
- Multiple victims contacted through SnapChat
- Pleaded guilty
- Sentenced to 40 years imprisonment at age 41

Daniel Salazar cr-20-25
- Multiple victims contacted through social media
- Pleaded guilty
- Sentenced to 45 years imprisonment at age 29

Monico Gastelo cr-20-252
- Exchanged CSAM with other offenders on Wickr and Telegram; convinced one boy in Fresno to send him sexually explicit images of himself
- Pleaded guilty

GOVERNMENT'S SENTENCING MEMORANDUM

17

- Sentenced to 40 years imprisonment at age 44

Looking beyond the Fresno division of the Eastern District of California, the case of *United States v. Malone*, 2024 WL 3579493 (9th Cir. July 30, 2024) bears some similarities to the present case as it relates to coercion and enticement. In *Malone*, the defendant communicated with a teenage minor, intending to induce the minor to engage in sexually explicit conduct, and then with an undercover police officer posing as the teenager,. *Id.* at *1. Malone's sentence included a term of imprisonment of 412 months. *Id.*  The sentence imposed in *Malone* did not even account for the egregious CSAM that is present in Githens' case.  And in *United States v. Hodges*, 171 F.4th 291 (4th Cir. 2026), the Fourth Circuit rejected the defendant's arguments about application of two of the same specific offense characteristics to which Githens has objected and affirmed a sentence of 324 months imprisonment. Notably, although Hodges had hoped to sexually abuse minors who were purportedly 11 and 13, there is no indication that he was involved in trafficking CSAM.

### F.  Victim Impact and Restitution

The process for identifying victims of the defendant's trafficking in their images remains ongoing.  As mentioned above, the government has forwarded to the probation office impact statements from several victims.  The government will attempt to resolve any claim for restitution with the defendant without the need for a hearing.  But, if necessary, the court can conduct a separate hearing to determine whether restitution is appropriate for any victim, and in what amount, at a later separate hearing.

### G.  Financial Assessments

The probation office recommends the court impose both the Justice for Victims of Trafficking Act of 2015 and the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 assessments.  PSR Sentencing Recommendation. Given Githens' Ph.D. and significant employment history as a college professor and entrepreneur, the government agrees that he has resources to satisfy financial assessments that the court might impose.  The government confirms that the defendant has provided a cashier's check for $75,000.  Consistent with the stipulation related to the trial of this case, the government will not seek any additional financial consequences from the defendant that would exceed the $75,000 he has provided.  The government hopes to be in a better position to suggest how the

GOVERNMENT'S SENTENCING MEMORANDUM

18

$75,000 should be apportioned, for example toward restitution or other obligations, by the time of the sentencing hearing.

### VI.    CONCLUSION

The court should impose a term of imprisonment of at least 365 months followed by a lifetime term of supervised release that includes the standard and special conditions proposed in the revised PSR. The court should also impose the two mandatory $100 penalty assessments and a forfeiture money judgement for $75,000.

Date:   July 17, 2026

ERIC GRANT
United States Attorney

By:  /s/ David Gappa
David Gappa
Assistant United States Attorney

/s/ McKenzie Hightower
McKenzie Hightower
Trial Attorney
United States Department of Justice
Criminal Division
Child Exploitation and Obscenity Section

GOVERNMENT'S SENTENCING MEMORANDUM